IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | Cr. No. 6:10-296-HMH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Rahman S. Waters, | ) | |
| | ) | |
| Movant. | ) | |

This matter is before the court on Rahman S. Waters' ("Waters") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The court ordered the Government to respond to Waters' motion, and the Government filed a response in opposition on June 25, 2012. Following the issuance of a Roseboro order, Waters filed a response in opposition on July 23, 2012. For the reasons that follow, the court dismisses Waters' § 2255 motion.

I. FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2010, a federal grand jury returned a one-count indictment charging Waters and ten co-defendants with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and a quantity of marijuana. On June 16, 2010, a superseding indictment charged Waters with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and a quantity of marijuana and added a charge for conspiracy to commit money laundering. Waters subsequently pled guilty pursuant to a written plea agreement to both counts on December 20, 2010. The Government moved for a downward departure pursuant to U.S.S.G. § 5K1.1, which the court granted. On July 26, 2011, Waters was sentenced to a total term of imprisonment of one hundred twenty months.

1

Pursuant to the plea agreement, Waters waived his right to challenge his conviction or sentence in either a direct appeal or collateral attack. Claims of ineffective assistance of counsel or prosecutorial misconduct, however, were expressly excluded from the appellate waiver. Proceeding pro se, Waters filed the instant § 2255 motion on April 17, 2012, alleging that the court lacked subject matter jurisdiction because venue was not proper and that counsel was constitutionally ineffective for advising Waters to waive his direct appeal and § 2255 collateral appeal rights and failure to move to strike the indictment based on lack of proper venue. (§ 2255 Mot., generally.)

## II. Discussion of the Law

### A. Waiver

As noted above, the plea agreement contained an appeal and collateral attack waiver that purports to waive all claims except for ineffective assistance of counsel and prosecutorial misconduct. A defendant may waive his right to challenge his conviction and sentence in a direct appeal or collateral attack as long as the waiver is knowing and intelligent. United States v. Poindexter, 492 F.3d 263, 270 (4th Cir. 2007). Generally, a waiver of appellate rights is knowing and intelligent when the district court fully questions the defendant regarding the waiver during the Rule 11 plea colloquy, and the record illustrates that the defendant understood the implications of the waiver. United States v. Manigan, 592 F.3d 621, 627 (4th Cir. 2010). However, when a plea agreement is influenced by the advice of constitutionally ineffective counsel, the waiver is not knowing and intelligent. United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). Waters alleges that his counsel was ineffective for advising him to waive his

appeal and collateral appeal rights because the court lacked subject matter jurisdiction based on lack of venue. (§ 2255 Mot. at 6(a).)

To successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, Waters must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by his counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. With respect to the second prong, one must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because Waters tendered a guilty plea, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985)

Venue is appropriate in any district where the conspiracy operated because acts of one co-conspirator may be attributed to all conspirators. United States v. Al-Talib, 55 F.3d 923, 928 (4th Cir. 1995); United States v. Snead, 527 F.2d 590, 591 (4th Cir. 1975). "The inquiry into the place of the crime may yield more than one appropriate venue . . . or even a venue in which the defendant has never set foot." United States v. Bowens, 224 F.3d 302, 309 (4th Cir. 2000). 18 U.S.C. § 3237(a) expressly provides that a conspiracy offense begun in one district and completed in another may be prosecuted "in any district in which such offense was begun, continued, or completed," and the defendant need not have been present in the district in which the prosecution is initiated. Waters alleges that the court had "no jurisdiction to prosecute" him because he was "not charged with any transaction that took place in the District of South

Carolina." (§ 2255 Mot. at 5.) At his plea hearing, the Government described Waters' involvement in the conspiracy as follows:

> [W]itnesses in this case have identified Rahman Waters as another member of the Demauryo Moody drug trafficking organization. He was not a member of the road team. He did not travel to Texas or to the metropolitan New York City area. What he did is he controlled a market for Moody in Buffalo, New York, where he would oversee the distribution of cocaine, multiple kilograms of cocaine supplied by Moody's source to buyers in Buffalo that were developed by Waters who had family connections in the Buffalo, New York, area.
> In May of 2005, a 24 kilogram load of cocaine was intercepted in Winnie, Texas, on the way from a known stash house in Pasadena, Texas. On the way to Georgia, and from there I believe on the way to Buffalo, that load of cocaine was loaded at a house at 1517 Taylor Road. The same house was under surveillance by DEA in August of 2005. And in October of 2005 an additional 7 kilograms of cocaine were seized from that house. But the only seizure in the highway that I know of in connection with Waters was the 24 kilograms that was eastbound in May of 2005.

(Plea Tr. at 35-36.) Waters agreed with this summary. (Id. at 37.) The evidence regarding Waters and the other co-defendants involvement in the drug conspiracy was that as part of the conspiracy drugs were transported from Texas to New York passing through Greenville County, South Carolina.

In fact, one of Waters' co-defendants, Brian Bennet, was

> a member of the so-called road team that went on the road and trafficked, moved loads of cocaine in vehicles equipped with concealed compartments from Sugar Land, Texas, and Katy, Texas, to Georgia, South Carolina, New York, various other locations throughout the United States. Bennett would transport money back to the source in Texas. He would also drive escort vehicles more so than load vehicles under the direction of Moody and reporting to Moody.

(Id. at 32.) Further, as the government noted during the plea hearing for Waters and several of his co-defendants,

4

if the conspiracy itself touches the District of South Carolina, even if he doesn't distribute drugs here or he launders money here, he's a participant in a conspiracy. Mr. Moody, who this defendant [Ferrell] worked directly for, worked with Mr. Davis and worked directly with Mr. Graham, they supplied drug organizations here in the District of South Carolina.

And one of their drivers was this woman who Mr. Harvey mentioned named Rashundria Burkes. Ms. Burkes was arrested in late 2005 with approximately 57 kilograms of cocaine hidden in a trap destined for the State of South Carolina. And she was stopped about 50 miles from the South Carolina border by Georgia Highway Patrol officers on 85 headed north from Atlanta toward -- through South Carolina and toward Charlotte and elsewhere.

(Id. at 40.)

Moreover, Waters' involvement in the conspiracy was detailed in the Presentence Investigation Report ("PSR"). Waters had no objections to the PSR and the court adopted the findings contained in the PSR. (Sentencing Tr. 2.) The PSR provides as follows:

A long term investigation conducted by the Greenville Police Department, Internal Revenue Service, Drug Enforcement Administration, and the Federal Bureau of Investigation revealed substantial drug activities in Greenville County, South Carolina. Numerous arrests and subsequent interviews of defendants and confidential informants allowed law enforcement officials to identify a massive drug distribution conspiracy.

This conspiracy was comprised of basically four groups. The three major groups were the Black Mafia Family headed by Terry and Demetrius Flenory; the Sin City Mafia / Death Before Dishonor headed by Jerry Davis; and the Blackout Entertainment headed by Demauryo Moody. The fourth group was a conglomeration of lower level distributors that were connected with one or more of these groups because of common suppliers or common individuals that helped launder their illicit finances through automobile and real estate purchases or rentals.

(PSR ¶¶ 16-17.) In addition, as to Waters' involvement in the conspiracy, the PSR states that

Waters is described as an interstate drug courier for Demauryo Moody. Discovery shows that he was the main individual in overseeing the transportation of cocaine to the Buffalo, New York, area. Waters had a disagreement with Moody in late 2004 to early 2005. He left Moody's organization and began his own drug distribution operation. Waters purchased vehicles and had hidden compartments installed in them. He also set up his cocaine supply through a former Moody

5

supplier. Waters hired individuals to drive shipments of cocaine from Texas through Atlanta to the New York area. Waters' clientele were individuals that he established relationships with when he was working for Moody. It is noted that Waters received a conservative estimate of at least 150 kilograms of cocaine from the same source that supplied Moody. One of Waters' associates noted they made at least sixteen transport trips for Waters. The vehicle they drove could hold up to 65 kilograms of cocaine. On most trips the vehicle was loaded with at least 50 kilograms of cocaine. Waters also used his financial assets from his drug business to purchase additional vehicles, property, and to establish fake businesses.

(Id. ¶ 22.) Therefore, the fact that Waters never traveled to South Carolina or was specifically involved in a drug transaction in South Carolina is not dispositive of the issue. See e.g., United States v. Davis, 666 F.2d 195, 200 (5th Cir. 1982) ("Since the prior actions of coconspirators in furtherance of the conspiracy are attributable to one who later joins the conspiracy, the conversations between Cochran and Mr. Davis and Cochran's drive through the Middle District of Georgia on his way to obtain the contraband methaqualone are attributable to Mrs. Davis. The actions of Mrs. Davis' coconspirators therefore serve to establish proper venue with respect to her within the Middle District of Georgia." (internal citations omitted)).

Based on the foregoing, venue was proper in the District of South Carolina as the admitted facts establish that drugs were transported through South Carolina. Therefore, Waters' allegation that his counsel was ineffective for advising him to waive his rights to direct appeal or collateral attack on the basis of lack of venue is without merit. Based on the foregoing, Waters' counsel was not constitutionally ineffective.

In addition, during his Rule 11 hearing, Waters indicated that he had no complaints about his attorney, and that he was fully satisfied with his counsel's representation. (Plea Tr. at 8.) The Government recited the provisions of the plea agreement, and the court specifically questioned Waters concerning the waiver, explaining that he was giving up his right to challenge

6

his conviction or sentence in a direct appeal or collateral attack except for claims of ineffective assistance of counsel and prosecutorial misconduct. (Id. at 17-29.) Waters responded that he understood that he was waiving his appellate rights and certain § 2255 claims. (Id. at 29-30.) Based on the forgoing, Waters' plea was a knowing and voluntary plea. In addition, the court finds that the waiver was knowing, voluntary, and intelligent and therefore valid.

## B. Subject Matter Jurisdiction Claim

Having found that Waters' plea was knowing and voluntary and the appellate waiver valid, Waters' claim that the court lacked subject matter jurisdiction because he was not charged with any drug transactions that occurred within the District of South Carolina has been waived. A knowing and voluntary guilty plea waives a venue claim. United States v. Calderon, 243 F.3d 587, 589 (2d Cir. 2001). In addition, as set forth above, even if Waters could raise the claim, it is without merit because venue was proper in the District of South Carolina.

It is therefore

**ORDERED** that Waters' § 2255 motion, docket number 658, is dismissed. It is further

**ORDERED** that a certificate of appealability is denied because Waters has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

                                              s/Henry M. Herlong, Jr.
                                              Senior United States District Judge

Greenville, South Carolina
July 26, 2012

**NOTICE OF RIGHT TO APPEAL**

The Movant is hereby notified that he has the right to appeal this order within sixty (60) days from the date hereof pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.